CAMP *v.* PARK, ADMR.

5-1067                                          295 S. W. 2d 613

Opinion delivered November 26, 1956.

*Ed E. Ashbaugh,* for appellant.

*John F. Park, Claude F. Cooper,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is a suit by an attorney to enforce a lien upon certain estate funds for the payment of his fee under a written contract with a principal beneficiary of the estate.

Bertrand W. Willson died intestate in October, 1950, survived by his widow, Beatrice Willson, his mother, Janie Willson Gardner, a brother and a sister. The brother, H. B. Willson, was appointed administrator of decedent's estate which consisted of postal savings and other liquid assets worth $17,800. In November, 1950, H. B. Willson and Florene Willson, his sister, entered into an agreement with their mother, Mrs. Gardner, whereby the estate would be divided equally between them, or one-third each, after deductions of the widow's dower and allowances. Shortly after execution of the written contract H. B. and Florene Willson instituted suit for specific performance which was resisted by the mother. Trial in chancery court resulted in a decree upholding the agreement and directing specific performance. Mrs. Gardner then employed appellant, Alonzo D. Camp, to represent her in an appeal of the case to this court under a written contract executed June 5, 1951, which provided: "I hereby agree to allow said attorney fifty per cent of whatever is recovered in said case. No fee will be charged unless a recovery is had." On the appeal ably prosecuted by appellant we reversed and held the agreement invalid for fraud practiced upon Mrs. Gardner and directed dismissal of the suit for specific performance. *Gardner* v. *Willson,* 219 Ark. 787, 244 S. W. 2d 945. Under this decision rendered January 7, 1952, Mrs. Gardner became sole beneficiary of her deceased son's estate subject to the widow's dower right of one-half plus statutory allowances.

Shortly after we handed down our decision H. B. Willson offered for probate an alleged holographic will

under which his deceased brother left all his property to him. In order to protect his client's interest as well as his own, appellant represented Mrs. Gardner in resisting probation of the alleged will. After submission of briefs by counsel for both sides the probate court entered judgment on July 31, 1952, denying probate of the purported will and there was no appeal from said judgment.

H. B. Willson failed to render any accounting in the estate and defaulted on his administrator's bond of $10,-000 in which Maryland Casualty Company was surety. In the latter part of 1952 appellant instituted proceedings in probate court for Mrs. Gardner and obtained a judgment against the administrator and surety. H. B. Willson was discharged and Hogan Oliver was appointed administrator in succession. Counsel for Oliver continued the demand for payment on the surety bond and after further investigation and negotiations the probate court ordered the surety to pay $10,000 into the registry of the court under its bond and this was done.

In the Spring of 1955 Mrs. Gardner discharged appellant and employed her present counsel. On May 5, 1955, she executed and filed in probate court a waiver and disclaimer of all her rights and interests as an heir and distributee in the estate of her deceased son. Appellant filed the instant suit in Chancery on May 24, 1955 to enforce either a statutory or equitable lien in his favor on the estate funds to the extent of $8,900 which he claimed as fees for his services under his contract with Mrs. Gardner. The separate answers of appellees, John F. Park, present administrator of the estate of Bertrand W. Willson, deceased, and Mrs. Gardner, denied generally the allegations of the complaint and asserted that assets of the estate were not subject to appellant's claim by reason of the disclaimer filed by Mrs. Gardner. The chancellor took the case under advisement following a trial on December 14, 1955.

On February 17, 1956, an order was issued in probate court on appellant's motion allowing him a fee of $750 for "legal services rendered the estate" and a check

for that amount was issued by the clerk to, and cashed by, appellant. This order was made without notice to appellees and the surety who appeared by their respective counsel in the instant suit and insisted that the probate order should have been made and entered as a final decree in the chancery suit, while appellant contended that the fee allowed was for his services in probate court only. After a hearing on March 9, 1956, the chancellor entered a decree denying appellant's prayer for a lien and stating that the $750 allowance was made on a *quantum meruit* basis and was for all his services rendered in both the probate court and the instant proceedings in chancery. This appeal is from that decree and there is no cross appeal by appellees.

We think the chancellor erred in holding that appellant was not entitled to a lien on the estate funds for the payment of his fee under the contract of employment executed by Mrs. Gardner. In our opinion it makes little difference whether the lien be enforced under our statute or as an equitable lien under the decisions. The statute (Ark. Stats., Sec. 29-132) in express terms gives the attorney a lien and interest in any judgment recovered for his client to the extent and in the amount to which he is entitled by contract, or, if no amount is fixed, a reasonable compensation for his services rendered. In *Osborne* v. *Waters,* 92 Ark. 388, 123 S. W. 374, the court held that when an attorney recovers a judgment for his client of the nature prescribed in the statute and takes steps to perfect his lien, he acquires an interest in the judgment of which he cannot be deprived after the judgment becomes final. While a client may dispose of his cause of action as he sees fit, if there are any proceeds from the litigation derived by settlement or final judgment the attorney has a lien thereon under the statute of which he cannot be deprived by the parties. *St. Louis I. M. & S. Ry. Co.* v. *Blaylock,* 117 Ark. 504, 175 S. W. 1170.

The equitable or charging lien of an attorney is based on the natural equity that a plaintiff should not be allowed to appropriate the whole of a judgment in

his favor without paying therefrom for the services of his attorney in obtaining such judgment. 7 C. J. S., Attorney and Client, Sec. 211. The following statement by the court in *Martin* v. *Schichtl,* 60 Ark. 595, 31 S. W. 458, has been quoted with approval in many subsequent cases: "Equity requires no particular words to be used in creating a lien. It looks through the form to the substance of an agreement; and if, from the instrument evidencing the agreement, 'the intent appear to give, or to charge, or to pledge, property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows.' " See also, *Walker* v. *Brown,* 165 U. S. 654, 17 S. Ct. 453, 41 Fed. 865; Pomeroy, Eq. Jur., Sec. 1235.

The authorities in general agree that the question whether an attorney's contingent-fee contract will give rise to an equitable lien in his favor on the fund recovered through his efforts is one of construction of the particular contract. The basic issue, in the absence of an express provision for a lien, is whether an intent that the fund recovered shall stand as security for payment of the fee sufficiently appears by implication. See cases cited in 143 A. L. R. 206 where there is an annotation to the leading case of *Button* v. *Anderson,* 112 Vt. 531, 28 A 2d 404. That case involved a contingent-fee contract similar to the one involved here, and the court said: "Where the parties have contracted that the attorney shall receive a specified amount of the recovered fund, such agreement will create an equitable lien on the fund in favor of the attorney to the extent of the amount stipulated. 5 Am. Jur. 394, Sec. 221; 6 C. J. 769, Sec. 366; 7 C. J. S., Attorney and Client, § 211." On the question of implication the court also stated: "Our first task is to determine whether the contract in question did create an equitable lien on the fund when received. It may be stated at the outset that such liens do not arise merely by virtue of a contract for a contingent fee. The test is whether the party contracting for the services sufficiently indicates an intention to make the fund described in the contract security for the debt. Such in-

tention need not be express, but may be implied from the terms of the agreement construed with reference to the situation of the parties at the time of the contract and by the attendant circumstances. If such intention appears, a lien is created, otherwise not. Or, to put it differently, it must appear that the other contracting party looked to the fund itself for payment and did not rely on the personal responsibility of the owner of the claim of which the fund was the result.'' Another similar case is *Winslow* v. *Becker,* 154 Or. 336, 58 P 2d 620, where there was an attempt to defeat the attorney's lien by the son of the widow-client inducing his mother to breach her contingent-fee agreement with her attorney.

Irrespective of statute, it has also been held that a lien may extend to attorney fees in suits arising from, and incidental to, the main cause, and that it is not essential that all the services for which a lien is claimed shall have been rendered before the same court. 7 C. J. S. Attorney and Client, Sec. 213b.

We cannot agree with appellees' assertion that appellant recovered nothing for his client and that his services were merely in defense of an existing right. Nor do we agree with appellant's contention that he is entitled to recover a fee of $8,900 which is fifty percent of the total gross assets of the estate. Under the trial court's decision in the first case upholding the agreement between Mrs. Gardner and the two surviving children, Mrs. Gardner would have been entitled to one-third of the estate after deduction of the widow's dower and allowances and the costs of administration. By reason of the successful appeal and resistance to other devices calculated to defeat her rights, Mrs. Gardner became entitled to the entire estate remaining after deduction of the widow's dower and allowances and the expenses of administration. While she had a right to discharge appellant and disclaim her interests in the estate she could not thereby defeat his right to his fee under the contract.

We therefore conclude that appellant had a lien for his fee under the employment contract to the extent of fifty percent of two-thirds of the estate assets remain-

ing after deduction of administration expenses and the widow's dower and allowances. In this connection it is noted that the widow is entitled to dower without deductions for any debts, claims or expenses of administration. *Dolton, Guardian* v. *Allen*, 205 Ark. 189, 167 S. W. 2d 893.

Appellees argue that the allowance of $750 by the chancellor, plus $135 additional which the evidence shows appellant received on his fee, amounts to more than he is entitled to receive under his contract with Mrs. Gardner. We are unable to determine the accuracy of this contention from this record. There is no proof as to the amount of the expenses of administration or the net value of the estate remaining after payment of such expenses and the widow's dower and allowances. While the only funds accounted for at the time of trial consisted of the $10,000 paid by the surety there was evidence that H. B. Willson had made several substantial payments to the widow before the payment by the surety. It was also indicated in the oral argument that H. B. Willson had rendered an accounting of some kind since the trial.

The decree is accordingly reversed and the cause remanded for further proceedings not inconsistent with this opinion.