Nealon POMTREE, *et al. v.* STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, *et al.*

02-1302 121 S.W.3d 147

Supreme Court of Arkansas
Opinion delivered June 19, 2003

*Dudley & Compton,* by: *Timothy O. Dudley,* for appellant.

*Matthews, Sanders & Sayes,* by: *Doralee I. Chandler* and *Mel Sayes,* for appellee.

TOM GLAZE, Justice. We take jurisdiction of this appeal, because it involves this court's power to regulate the practice of law. Ark. Sup. Ct. R. 1-2(a)(5). Specifically, appellant Nealon Pomtree questions the trial court's imposition of Rule 11 sanctions for his having filed suit in Pulaski County Circuit Court against State Farm Mutual Automobile Insurance Co. (State Farm); the Pulaski County Circuit Court found that Pomtree improperly attempted to collaterally attack an attorney's lien issue which was already pending in the Cleburne County Circuit Court. That pending suit in Cleburne County was originally filed by Bobby New[1] against Mary J. Davis, State Farm's insured, and arose out of a car accident in Quitman (Cleburne County), in which New sustained serious injuries. The facts leading to this appeal are not in dispute.

Bobby New's automobile accident involving Davis and her car occurred on April 20, 2000. On January 12, 2001, New contacted Pomtree, who agreed to represent New in a personal injury suit against Davis. New and Pomtree signed a contract, which provided for an attorney's fee of one-third of any settlement and further provided that the contract constituted an attorney's lien. About five months later, New sent a letter to Pomtree informing him that New decided to employ an attorney friend, who would give New guidance for no fee. Pomtree quickly acted to protect his attorney's lien by sending a letter to State Farm and enclosing a copy of his employment contract with New.

---

[1] Bobby New's wife, Linda New, joined in the Cleburne County suit and Pomtree's law firm was named as plaintiffs in the Pulaski County lawsuit, but in writing the opinion, we make reference only to Bobby New and Nealon Pomtree.

On December 20, 2001, State Farm, as Davis's insurer, entered into a settlement agreement with New in the sum of $700,000. The Cleburne County Circuit Judge approved the agreement, but retained jurisdiction to resolve any dispute between New and his former counsel, Pomtree, regarding Pomtree's assertion of a lien. State Farm then issued a check in the amount of $233,333.33 to New, his wife, and Pomtree. This check amount represented one-third of the settlement amount called for in Pomtree's contract of employment. On December 21, 2001, State Farm sent a letter to Pomtree, enclosing the check, and requesting Pomtree to endorse and return it, so the check could be deposited into the Cleburne County registry until that circuit court could resolve Pomtree's lien claim. That same day — December 21 — Pomtree filed suit against State Farm in Pulaski County Circuit Court, and alleged State Farm had failed to protect Pomtree's lien. On December 26, 2001, Pomtree filed an amended complaint, additionally naming New as a defendant and alleging New had breached his contract with Pomtree. Both New and State Farm moved to dismiss Pomtree's lawsuit in Pulaski County, because the Cleburne County Circuit Court, rather than the Pulaski County court, had venue of Pomtree's attorney's fee lien claim.

In response, Pomtree filed another amended complaint, asserting the Pulaski County Circuit Court should not only enforce his one-third contingent fee amount, but also include and enforce payment of his expenses and interest in the total amount of $488.95. New and State Farm renewed their motions to dismiss; they also filed motions for the court to impose Rule 11 sanctions against Pomtree, alleging that Pomtree's pleadings were not well grounded in fact and not warranted by existing law. The Pulaski County Circuit Court agreed with New and State Farm that venue of Pomtree's fee lien was pending in the Cleburne County Circuit Court, which had previously retained jurisdiction to decide Pomtree's lien claim; however, because the court considered matters outside the parties' proceedings, it dismissed the action by granting summary judgment in favor of State Farm and New. The Pulaski County Circuit Court further awarded sanctions of costs and attorney's fees in the total amount of $3,105. Pomtree brings this appeal, challenging the Pulaski County Cir-

cuit Court's two rulings, dismissing Pomtree's suit and imposing Rule 11 sanctions against him.

■ ■ We first mention the settled law that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. *Palmer v. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001). On appeal, the reviewing court simply determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Chavers v. General Motors Corp.*, 349 Ark. 550, 79 S.W.3d 361 (2002).

On appeal, Pomtree maintains that it was proper to file his complaint against State Farm and New in Pulaski County, because he had properly perfected his lien on the settlement proceeds. He asserts that State Farm should have issued a check for the entire settlement amount of $700,000, claiming that, under Ark. Code Ann. § 16-22-301 *et seq.* (Repl. 1999), he had an absolute right to a lien on his client's cause of action that attached to any settlement and the proceeds thereof. Particularly, Pomtree takes issue with State Farm's "unilateral" decision to disburse funds from the settlement, which he appears to believe deprived him of his lien interest. To understand his arguments, it is necessary first to examine the attorney's lien statutes.

Ark. Code Ann. § 16-22-304(a) provides the mechanism by which an attorney may perfect a lien on his or her client's cause of action; that statute provides, in relevant part, as follows:

> (a)(1) From and after service upon the adverse party of a written notice signed by the client and by the attorney at law . . . representing the client, which notice is to be served by certified mail, a return receipt being required to establish actual delivery of the notice, the attorney at law . . . serving notice upon the adversary party *shall have a lien upon his client's cause of action, claim, or counterclaim, which attaches to any settlement,* verdict, report, decision, judgment, or final order in his client's favor, and the proceeds thereof in whosoever's hands they may come.

§ 16-22-304(a)(1) (emphasis added).

██ ██ Further, § 16-22-303(b) provides for situations where a client and another party litigant reach a settlement without the consent of the client's attorney. In such a case, "the court of proper jurisdiction shall, upon motion, enter judgment for a reasonable fee or compensation against all of the parties to the compromise or settlement so made without the consent of the attorney at law." Stated another way, the parties to the lawsuit have the right to make a settlement, but in making such settlement, the statute "requires that they shall take into consideration the fact that the attorney has a lien upon the cause of action and provides for its enforcement in the action to the end that the parties may not ignore his lien, and deprive him of *his rights under his contract*." *St. Louis, I.M.&S. Ry. Co. v. Hays & Ward*, 128 Ark. 471, 478, 195 S.W. 28 (1917) (emphasis added). The *Hays* court also made it clear that the attorney's lien statute "gives the attorney a lien *for that percentage of the proceeds which his contract with his client entitled him to receive*[.]" *Id.* at 477 (emphasis added).

██ This court more recently explained in *Froelich v. Graham*, 349 Ark. 692, 80 S.W.3d 360 (2002), that the attorney's lien statute is "based on equitable principles establishing that [the] lien is based on the natural equity that a plaintiff should not be allowed to appropriate *the whole of a judgment* in his favor without paying for the services of his attorney who assisted in obtaining such judgment." *Froelich*, 349 Ark. at 697(citing *Camp v. Park*, 226 Ark. 1026, 295 S.W.2d 613 (1956)) (emphasis added). The lien operates as security, and if the settlement entered into by the parties is in disregard of it *and to the prejudice of plaintiff's attorney*, the court will interfere and protect its officer by vacating the satisfaction of judgment and permitting execution to issue for the enforcement of the judgment to the extent of the lien. *Id.* (citing *Hays, supra*) (emphasis added). Clearly, the purpose of § 16-22-303 is to protect the attorney in the event his interest under the attorney-client employment contract is threatened with prejudice or impairment.

Pomtree points to the language in the lien statutes stating that the attorney "shall" have a lien on the client's cause of action, *see* § 16-22-304(a)(1); the court "shall" determine and enforce the lien, *see* § 16-22-304(d); and, when a settlement is made without the consent of the attorney, the court "shall" enter judgment for a rea-

sonable fee, *see* § 16-22-303(b). However, his arguments do not take into consideration the issues raised and addressed in the cases cited above, especially the language in *Hays* that the lien attaches to "that percentage of the proceeds which his contract with his client entitled him to receive."[2] That is, Pomtree fails to recognize that nothing in the lien statute gives him an absolute right to claim a lien against the *entire* amount of the settlement until such time as the validity and enforceability of his lien is determined.

■ Because Pomtree's lien would only attach to one-third of the $700,000 settlement, or $233,333.33, it is obvious that, by issuing the check to Pomtree and the News, State Farm was aware of Pomtree's lien and was acting in such a way as to protect the sums that were arguably due to him. State Farm and New "[took] into consideration the fact that the attorney has a lien," as they were required to do. *See Hays, supra.* Because the amount issued by State Farm to the News and Pomtree was equal to the amount Pomtree could have received under his contract with New, Pomtree suffered no harm as a result of the manner in which the check was issued.

■ Further, with respect to venue, Pomtree cites § 16-22-304(d), but seems to overlook or misunderstand its plain wording, which is controlling here. The statute reads as follows:

> (d) *The court . . . before which an action was instituted, or in which an action may be pending at the time of settlement,* compromise, or verdict, or in any chancery court of proper venue, upon the petition of the client or attorney at law, *shall determine and enforce the lien created by this section.*

(Emphasis added.) *See also Milligan v. Circuit Court of Crawford County*, 331 Ark. 439, 959 S.W.2d 747 (1998). In that case, Milligan filed a petition for writ of prohibition in this court, seeking to prevent the Crawford County Circuit Court from exercising jurisdiction in an attorney's lien case. This court denied the petition

---

[2] On this issue, *see also* Ark. Code Ann. § 16-22-301 (Repl. 1999), the "legislative intent" section of the lien statute, which declares that it is the intent of the statute "to allow an attorney to obtain a *lien for services based on his or her agreement with his or her client* and to provide for compensation in case of a settlement or compromise without the consent of the attorney." (Emphasis added.)

because the underlying cause of action was being prosecuted in Crawford County, and therefore, that county was the "appropriate venue for the award of attorney fees." *Milligan*, 331 Ark. at 442. Pomtree asserts that Pulaski County was the proper venue, because State Farm resides there and was summoned there. However, New and State Farm settled New's pending lawsuit in Cleburne County; thus, under § 16-22-304(d), any action Pomtree filed in order to establish his lien was required to be brought in that county. Pomtree's assertion to the contrary is plainly wrong.

Finally, Pomtree asserts that the trial court erred in finding that the $233,333.33 check adequately protected his lien, because that check "did not cover costs incurred . . . in connection with the case." He cites *McNeill v. Percy*, 201 Ark. 454, 145 S.W.2d 32 (1940), in support of his argument that an attorney's lien applies to expenses, in addition to whatever fee the attorney and client have agreed upon. However, in *McNeill*, the employment contract between the attorneys and their client provided that the client "agreed to pay . . . them for their services one-third of whatever sum might be realized [in the lawsuit], and in addition, *agreed to pay them, out of his share of the recovery, any expenses which they might properly incur.*" *McNeill*, 201 Ark. at 455 (emphasis added).

■ ■ By way of contrast, the employment agreement between Pomtree and New provided for Pomtree's fees as follows:

> I agree to compensate my attorneys by paying them one-third (1/3) of all sums recovered on my behalf as the result of a settlement without trial and forty percent (40%) of all sums recovered on my behalf if a trial is necessary.

This clause makes no mention of expenses. Although Pomtree argues that a legitimate issue of fact existed for trial in the Pulaski County Circuit Court, regarding whether New orally or impliedly agreed to pay expenses in the event of a settlement or verdict, Pomtree offered no evidence or argument, in any of his pleadings or at the hearing on the motions to dismiss, of any implied or oral agreement between himself and Mr. New. In sum, because the Pulaski County court treated this as a motion for summary judgment, once State Farm and New established a *prima facie* entitlement to summary judgment, Pomtree was obligated to meet proof with proof to

demonstrate the existence of a material issue of fact. *See Pfeifer v. City of Little Rock*, 346 Ark. 449, 57 S.W.3d 714 (2001). Pomtree failed to do so, and the Pulaski County court correctly granted summary judgment to State Farm and New.

The other issue to be determined in this appeal is whether the trial court erred in imposing Rule 11 sanctions against Pomtree. Under Rule 11, a trial court may sanction an attorney for signing a pleading in violation of the Rule, which states in relevant part as follows:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Ark. R. Civ. P. 11(a) (2003).

The primary purpose of Rule 11 sanctions is to deter future litigation abuse, and the award of attorney's fees is but one of several methods of achieving this goal. *See Crockett & Brown, P.A. v. Wilson*, 321 Ark. 150, 901 S.W.2d 826 (1995). When a trial court determines that a violation of Rule 11 has occurred, the Rule makes sanctions mandatory. *Id.* The moving party has the burden to prove a violation of Rule 11. *Bratton v. Gunn*, 300 Ark. 140, 777 S.W.2d 219 (1989). The imposition of sanctions pursuant to Rule 11 is a serious matter to be handled with circumspection, and the trial court's decision is due substantial deference. *Williams v. Martin*, 335 Ark. 163, 980 S.W.2d 248 (1998); *Crockett & Brown, supra.* We review a trial court's determination of whether a violation of Rule 11 occurred under an abuse-of-discretion standard. *Id.* In deciding an appropriate sanction, trial courts have broad discretion not only in determining whether sanctionable conduct has occurred, but also what an appropriate sanction should be. *Id.*

Rule 11 is not intended to permit sanctions just because the trial court later decides that the attorney against

whom sanctions are sought was wrong. *Crockett & Brown, supra.* In exercising its discretion under Rule 11, the trial court is expected to avoid using the wisdom of hindsight and should test the lawyer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *Id.* The essential issue is whether the attorney who signed the pleading or other document fulfilled his or her duty of reasonable inquiry into the relevant law, and the indicia of reasonable inquiry into the law include the plausibility of the legal theory espoused in the pleading and the complexity of the issues raised. *Id.* The moving party establishes a violation of Rule 11 when it is patently clear that the nonmoving party's claim had no chance of success. *See Chlanda v. Killebrew,* 329 Ark. 39, 945 S.W.2d 940 (1997).

In the present case, the Pulaski County court imposed Rule 11 sanctions against Pomtree after finding that Pomtree's case was "nothing more than an attempt . . . to collaterally attack an issue within another court's jurisdiction, without any reasonable basis in the law to support this action." At the hearing on the motions to dismiss, Pomtree had conceded that he wanted the entire $700,000 placed into the Cleburne County court's registry, because it would have given him more "leverage" over New in forcing him to settle his claim. In response, the Pulaski County Circuit Judge stated from the bench as follows:

> You're only entitled to a certain amount, and you claim that's $233,333[.33], and you keep talking about leverage and then what you'd have against the plaintiff in the case. You still are not entitled to more than $233,000 [*sic*] and they're apparently claiming you're not entitled to that, and I'm not sure what you would gain by saying, well, we'll put the entire $700,000 into the court and we still sit there arguing over how much of the $233,000 you're entitled to. But you keep the plaintiff from getting any money at all until the court finally determines what your claim is. I don't see the sense in that. You're just saying it will force the plaintiff to take less money in order to get the thing settled.

The trial court's order also noted that Pomtree did not deny knowing that the settlement check, issued specifically to protect the attorney's lien, had been drafted and offered for placement in the registry of the Cleburne County Court; neither did Pomtree

deny that the Cleburne County Court had reserved jurisdiction over the issue of attorney's fees when it approved the settlement. In addition, the trial court determined that Pomtree could not "resuscitate [his] cause of action" by alleging damages in the form of costs and expenses "when there is no legal or contractual basis for . . . costs and interest to be treated as damages."

 Because it was "patently clear" that Pomtree's Pulaski County suit had no chance of success, *see Chlanda, supra,* and because Pomtree's attempt to manufacture venue by claiming unwarranted costs and expenses was likewise inappropriate, we cannot say that the trial court abused its discretion in imposing Rule 11 sanctions against Pomtree. We therefore affirm the trial court's holding in its entirety.

CORBIN, J., not participating.