SLIP OPINION

Cite as 2013 Ark. App. 672

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–13–320

| | |
|---|---|
| CITY OF LITTLE ROCK<br><br>APPELLANT<br><br>V.<br><br><br>GURMEET S. NERHAN and GEORGE NERHAN<br><br>APPELLEES | **Opinion Delivered** November 13, 2013<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. CV2004–11927]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>REVERSED IN PART; AFFIRMED IN PART |

## DAVID M. GLOVER, Judge

The City of Little Rock appeals from sanctions imposed against it in a January 16, 2013 order from the Pulaski County Circuit Court. In addition to imposing sanctions, the trial court also denied the City's motion to recuse from the case. In this appeal, the City contends 1) that the trial court erred in awarding sanctions under Arkansas Rules of Civil Procedure 1 and 11 in the absence of any pleading, motion, or other paper alleged to have been in violation of Rule 11; and 2) that the trial court created impropriety or the appearance of impropriety in failing to recuse. We reverse the trial court's imposition of sanctions and affirm its denial of the motion to recuse.

*Background*

A history of this litigation is necessary. The present appeal follows a 2004 nuisance action initiated by the City of Little Rock against Gurmeet "George" Nerhan.[1] At all relevant times, Nerhan has owned property known as Heritage House Inn, located on South University Avenue in Little Rock. In the original action, the City alleged that criminal conduct at Heritage House Inn was disturbing the use and enjoyment of nearby properties and sought remedies to enjoin and abate the nuisance. Following a hearing, the trial court entered an order in August 2005, finding that the City was entitled to relief, ordering certain remedial measures, and setting a status hearing in November 2005.

At the November hearing, the court determined that Nerhan's property remained in noncompliance, but granted him an extension until December 2005 to satisfy applicable code requirements. The court's order further specified that Nerhan could elect not to repair the violations in the rooms of Buildings 1 and 2 (which the City had previously notified him were in a state of disrepair and did not meet the minimum code standards), but that if he so elected, he was prohibited from renting or otherwise allowing occupancy of those rooms. In a December 2005 order, the trial court set a time line for Nerhan to accomplish various tasks designed to bring the entire property into compliance.

It is unclear from the record before us what actions, if any, were taken by Nerhan and/or the City between the December 2005 order and a motion to appear and show cause

---

[1]Although the style of this case identifies two appellees, the record reflects that the trial court in its April 3, 2012 order identified Gurmeet "George" Nerhan as the sole defendant in the City's show-cause action initiated on March 6, 2012.

filed by the City on March 6, 2012. What is clear, however, is that on February 28, 2012, the matter came back into focus when the City's police department investigated a report of an unattended child left in a rented room at the Heritage House Inn, followed by subsequent inspections revealing numerous code violations and the "discovery that there were two rooms in the rear of Building 1 that Heritage House Inn was renting as of February 28, 2012, one of which was rented on a permanent basis to a Heritage House Inn employee." These revelations resulted in the City's March 6 motion to appear and show cause.

In its April 3, 2012 order entered after a March 29 contempt hearing, the trial court concluded that the City had met its burden of proving a willful and intentional violation of the court's August 2005 and November 2005 orders. The trial court further ordered closure of the Heritage House Inn and evacuation of tenants "for a period of time to allow the Defendant to bring all structures and rooms into compliance with the Fire, Maintenance, Building, Electrical, Mechanical, and Plumbing Codes." The order then specifically provided: "After the City has inspected and determined that all structures and rooms at the Heritage House Inn are in compliance with [City codes] either party may petition the Court for a status hearing. The structures and rooms at the Heritage House Inn shall remain closed until the Court issues a ruling otherwise."

On May 4, 2012, the City filed another motion to appear and show cause because it had been reported to the City that the rooms had not yet been evacuated. On May 7, 2012, the trial court ordered Nerhan to appear on May 15 and show cause why he should not be held in contempt. It is not clear from the record whether this hearing took place; however,

SLIP OPINION

the record reflects that Nerhan entered a negotiated plea on August 13, 2012, and paid a $1000 fine.

Several days earlier, on August 10, 2012, Nerhan filed a petition to reopen Heritage House Inn, alleging that he believed the property was in compliance based on an inspection conducted by Hall Engineering, Ltd., but the petition was withdrawn later that same day after consultation with the City "to allow time for all necessary city departments and inspectors to perform a walkthrough."

On December 6, 2012, Nerhan filed a second petition to reopen in which he requested an expedited hearing, alleging to-wit: that the City had determined two weeks earlier that Heritage House Inn was in compliance yet had refused to sign a joint motion to reopen or to submit a joint proposed order for the court to allow reopening; that the City was asking for new items to be performed that are not required by any City code; that he had installed a gate in an "attempt to go above and beyond" to satisfy the City; that the City still refused to sign off; that in "light of the [City's] delaying tactics," he requested an expedited hearing; and that in light of his full compliance with all applicable City codes, he requested permission to reopen. In its response to the petition, the City admitted it had inspected Heritage House Inn and determined that all structures and rooms met the minimum requirements set forth in the codes; acknowledged that it had not signed a joint motion to reopen nor signed a proposed joint order for submission to the trial court; asserted that the determination as to whether Nerhan met the trial court's requirements, and whether Nerhan should be allowed to reopen, lay with the trial court; and admitted that it had requested the installation of a gate

4

on the property, which had been installed.  Finally, the City denied engaging in any delaying tactics.

A hearing on the petition to reopen was held on December 19, 2012.  At the outset of the hearing, Nerhan's counsel stated his belief that the City was willing to stipulate that Heritage House Inn was in full compliance, and the City's counsel stated he was perfectly willing to stipulate that the property was in compliance with all the fire, electrical, and building codes as required under the court's order.  The trial court  then asked what prevented the submission of an agreed order to the court indicating that the property was in compliance with court's April 3, 2012 order so that the property could have opened sooner rather than later.  Answering the trial court's inquiry, the City's counsel advised that with his more or less corporate client, he had had some trouble getting the authority to do so. Nerhan's counsel interjected that he believed the dilemma was beyond the City's counsel's pay grade, offering his opinion that he thought counsel's hands were tied, but nonetheless Nerhan had been frustrated that he was in full compliance, with no issues, yet the City had refused to allow him to reopen.  Nerhan's counsel  acknowledged that he knew the property could reopen only subject to the court's order, but surmised that the court would not have any trouble signing off on an agreed order if the City stipulated that everything was in compliance.

The court stated that in preparing for the hearing, it had the impression that, notwithstanding the property's compliance with the court's order, the City was demanding additional action above and beyond what was required in the court's order as a condition

5

precedent to agreeing for the property to reopen. The court also expressed its concern that a governmental entity that had requested the closure of private property, because it was out of compliance with codes, would drag its feet in allowing the property to reopen even after confirming that the property had been brought into compliance. In addition, the court noted Rules 1 and 11 of the Arkansas Rules of Civil Procedure, which it said strive to secure just, speedy, and inexpensive determinations of actions and certification that documents signed by counsel are well grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. The court stated its opinion that it had inherent power to issue sanctions on motion or sua sponte. It stated, however, that it was not going to resort to Rule 11 sanctions against the City but that it appeared to the court that the facts in the instant case came troublingly close to the court's understanding of the meaning of needless delay and harassment. The court also noted that the property had been a long-running problem and expressed its hope to Nerhan that the property would remain in compliance because the court had the authority and the will to close it if it did not. Finally, the court noted the witnesses and court personnel who unnecessarily had to be present for a hearing that was resolved by stipulation. Then, by order entered in open court on December 19, 2012, and filed the same day, the trial court ruled that all of the structures and rooms at the Heritage House Inn were in compliance with City codes and ordered that it be permitted to reopen for business.

Precipitating this appeal, however, in the days following entry of the December 19 order, the trial court entered additional orders by which it reconsidered its Rule 11 concerns

and imposed sanctions on the City for "unnecessary delay and harassing conduct." By letter dated December 20, 2012, the trial court informed the parties of its decision to impose sanctions, explained its basis for doing so, enclosed a proposed order to that effect for the parties' information, and instructed them to acknowledge receipt of the letter and to notify the court of any objections. On December 21, 2012, the trial court entered its order that imposed sanctions for unnecessary delay and harassing conduct, explained its rationale for doing so, instructing Nerhan to submit a statement setting forth designated costs and attorney's fees on or before January 3, 2013, instructed the City to respond or otherwise object to the statement of costs and attorney's fees on or before January 10, 2013, and informed Nerhan that he could file a reply on or before January 17, 2013.

Nerhan filed his statement of fees and costs on December 31, 2012; the City filed its objection to imposition of sanctions and a motion for recusal on January 11, 2013. The trial court filed its order imposing sanctions for unnecessary delay and harassing conduct on January 11, 2013, and on January 16, 2013, it filed its order that awarded fees, costs, and expenses and denied the motion to recuse. This order found the submitted statement of fees, litigation costs, and travel expenses to be reasonable and ordered the City to pay Nerhan $1,603.33 for attorney's fees and litigation costs incurred, and $794.30 for travel expenses sustained in connection with the December 19, 2012 hearing. The order also denied the City's motion for recusal. This appeal followed.

7



*Discussion*

I.    The trial court erred in awarding sanctions against appellant in the absence of any pleadings, motions, or other papers in violation of Rule 11 of the Arkansas Rules of Civil Procedure.

The primary purpose of Rule 11 sanctions is to deter future litigation abuse, and the award of attorney's fees is but one of several methods of achieving this goal. *Parker v. Perry*, 355 Ark. 97, 131 S.W.3d 338 (2003)*(*quoting *Pomtree v. State Farm Mut. Auto. Ins. Co.*, 353 Ark. 657, 121 S.W.3d 147 (2003)). When a trial court determines that a violation of Rule 11 has occurred, the Rule makes sanctions mandatory. *Id.* The moving party has the burden to prove a violation of Rule 11. *Id.* The imposition of sanctions pursuant to Rule 11 is a serious matter to be handled with circumspection, and the trial court's decision is due substantial deference. *Id.* We review a trial court's determination of whether a violation of Rule 11 occurred under an abuse-of-discretion standard. *Id.* In deciding an appropriate sanction, trial courts have broad discretion not only in determining whether sanctionable conduct has occurred, but also what an appropriate sanction should be. *Id.* Rule 11 is not intended to permit sanctions just because the trial court later decides that the attorney against whom sanctions are sought was wrong. *Id.* In exercising its discretion under Rule 11, the trial court is expected to avoid using the wisdom of hindsight and should test the lawyer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *Id.* The essential issue is whether the attorney who signed the pleading or other document fulfilled his or her duty of reasonable inquiry into the relevant law, and the indicia of reasonable inquiry into the law include the plausibility of the legal

theory espoused in the pleading and the complexity of the issues raised. *Id.* The moving party establishes a violation of Rule 11 when it is patently clear that the nonmoving party's claim had no chance of success. *Id.*; s*ee also Ver Weire v. Arkansas Dep't of Human Servs.*, 71 Ark. App. 11, 26 S.W.3d 132 (2000).

The major thrust of the City's abuse–of–discretion argument on appeal is that Rule 11 does not apply because it filed no pleadings, motions, or other papers in violation of Rule 11 and that simply failing to stipulate to an adversarial party's position is not actionable under Rule 11.[2] We do not agree with this basic premise of the City's argument because it is clear that Rule 11 does apply. The City filed a response to Nerhan's petition to reopen. Pursuant to Rule 11, the signature on that response certified that to the best of the attorney's "knowledge, information, and belief formed after reasonable inquiry it [was] well grounded in fact and [was] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, that it [was] not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . ." The trial court was clearly not invoking Rule 11 based solely on the City's refusal to stipulate to its adversary's position; the City filed a document signed by counsel.

While we do not agree with the major thrust of the City's argument, we do find an abuse of discretion in the trial court's award of sanctions in this case. An abuse of discretion may be manifested by an erroneous interpretation of the law. *Craig v. Carrigo*, 340 Ark. 624,

---

[2]While we have grave concerns about the trial court's actions under a due–process analysis, which is the basis for the concurring opinion, the City did not raise any due–process arguments in this appeal.

12 S.W.3d 229 (2000).

In its January 16, 2013 order, the trial court relied in part upon the case of *Arkansas Judicial Disciple & Disability Commission v. Simes*, 2011 Ark. 193, 381 S.W.3d 764, as support for the position that a trial court may determine if sanctions are warranted, even in the absence of a motion, because it was consistent with the trial court's inherent authority to protect the integrity of the proceedings pending before it. However, we note that the rationale relied upon by the trial court was quoted from the dissenting opinion in *Simes*. While we agree that the language of Rule 11 seems to authorize the court to impose sanctions upon its own initiative,[3] and that view is certainly advocated by the dissenting opinion in *Simes*, *supra*, we have determined that is not what the majority opinion in the *Simes* case provides when reviewed in conjunction with the underlying case of *Weaver v. Helena*, 367 Ark. 159, 238 S.W.3d 74 (2006).

In *Weaver*, *supra*, our supreme court reversed sanctions that had been imposed by Judge Simes under Rule 11 of the Arkansas Rules of Civil Procedure. At the outset of the *Weaver* opinion's discussion of the Rule 11 issue, the supreme court quoted Rule 11 "in pertinent part." In doing so, however, the Rule 11 quote sets forth only a portion of section (a) and

---

[3]Rule 11 (a) provides in pertinent part: "If a pleading, motion, or other paper is signed in violation of this rule, the court, *upon motion or upon its own initiative*, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." (Emphasis added.)

only a portion of section (b), without indicating any omissions within either section.[4] The resulting quote leaves the impression that there is not authority under the rule for a trial court to act on its own initiative, and, accordingly, that the only way for Rule 11 violations to be handled under the rule is by motion, following the procedural steps outlined in section (b). Later in the *Weaver* opinion, the supreme court explained:

*There was no separate motion for sanctions made in this case, and such a motion is required by Rule 11 before sanctions may be imposed.* At the January 7 hearing, which was scheduled as a recusal hearing, Judge Simes immediately began a protracted inquiry into possible Rule 11 violations by the appellant. The appellant was given no notice that Rule 11 would be addressed at the hearing. Judge Simes had Weaver removed from the court-room initially, and he then conducted an intensive inquiry into Murray's knowledge and application of the Rules of Professional Conduct. The examination generally consisted of Judge Simes reading sizable passages from the rule book aloud, and then questioning Murray on the extent of his knowledge thereof. Murray stated that he was familiar with the rules and had adhered to them in the present case, although he admitted that he could not recite the rule book verbatim. Weaver was then returned to the courtroom and similarly quizzed, as if he were an attorney and familiar with the rules. All this occurred prior to any real inquiry into the veracity of Weaver's allegations supporting the motion to recuse. Judge Simes seemed to presume the falsity of the allegations throughout the proceedings.

In summation, the procedural requirements for the imposition of sanctions under Rule 11 were disregarded by Judge Simes, and the appellant was subjected to a de facto Rule 11 hearing of which he was given no notice. That hearing occurred before the court attempted to establish the falsity of the allegations in the motion for recusal, and the court ultimately failed to establish that the allegations were false. Judge Simes abused his discretion by imposing sanctions upon the appellant under Rule 11. Based on the record before us, it appears that Judge Simes has violated the Arkansas Code of Judicial Conduct. Accordingly, we direct the clerk of this court to forward a copy of this opinion to the Arkansas Judicial Discipline and Disability Commission.

367 Ark. at 164—65, 238 S.W.3d at 78—79 (emphasis added & citations omitted).

---

[4]An examination of 2005 and 2006 versions of Rule 11 confirms that both included the language, "If a pleading, motion, or other paper is signed in violation of this rule, the court, *upon motion or upon its own initiative*, shall impose . . . ." (Emphasis added.)

SLIP OPINION

Following the supreme court's referral of the matter in *Weaver* to the Arkansas Judicial Discipline and Disability Commission, the Commission investigated Judge Simes's conduct in the *Weaver* case and proceeded to a formal adjudication. After a hearing before a three-member panel of the Commission to develop the facts surrounding the *Weaver* case, the panel concluded that Judge Simes had violated some of the canons of the Arkansas Code of Judicial Conduct and recommended that he be removed from office. The full Commission adopted the panel's report and recommended to the supreme court that he be removed from his position as circuit-court judge. The supreme court was then faced with the task of deciding whether to accept the Commission's recommended findings and recommendation of removal. The supreme court accepted some findings and rejected others.

For purposes of the instant appeal, however, Justice Karen Baker wrote an extensive dissent in *Simes*, *supra*, in which she criticized the supreme court's opinion in the earlier *Weaver* case that resulted in the referral of Judge Simes to the Commission. She quoted the language from *Weaver* that declared that a separate motion for sanctions was required by Rule 11 before sanctions could be imposed. Justice Baker declared that the *Weaver* opinion was "simply wrong" in that regard. She then quoted the language from Rule 11(a) that provides that "the court, *upon motion or upon its own initiative,*" (emphasis added) shall impose appropriate sanctions if a document is signed in violation of Rule 11, and she noted that the rule's provision in this regard, *i.e.*, for a court to determine if sanctions were warranted absent a motion was consistent with the trial court's inherent authority to protect the integrity of the proceedings pending before it.

Rule 11 is divided into two sections. Section (a) explains the significance of signing a pleading, motion, or other paper, and it sets forth the consequences of failing to sign or signing in violation of the rule. It further provides that appropriate sanctions shall be imposed by the court, upon motion or upon its own initiative, when the rule is violated. Moreover, our case law establishes that when a court determines that a violation of Rule 11 has occurred, the Rule makes sanctions mandatory. *Parker v. Perry, supra*; *Pomtree v. State Farm Mut. Auto. Ins. Co., supra*. Section (b) sets forth the procedural requirements that are necessary in filing a motion that asserts Rule 11 violations, but it provides no guidance for situations in which a court acts "upon its own initiative."[5]

In the instant case, we have concluded that we are constrained to follow our supreme court's interpretation of Rule 11 in *Weaver, supra*, even though that interpretation seems to

---

[5]As explained by our supreme court in *Ward v. Dapper Dan Cleaners & Laundry, Inc.*, 309 Ark. 192, 194, 828 S.W.2d 833, 835 (1992), "Our Rule 11 mirrors Fed. R. Civ. P. 11, and on occasion, we have looked to how the federal courts have interpreted their Rule when considering whether to award sanctions." In looking to how federal courts handle court-initiated actions under Rule 11, however, it appears that our rule no longer mirrors Rule 11 under the federal rules—at least with respect to procedural guidelines for court-initiated actions under Rule 11. That is, federal Rule 11 provides procedural guidelines for a federal court acting on its own initiative: "(3) **On the Court's Initiative.** On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). And, further, "(5) **Limitations on Monetary Sanctions.** The court must not impose a monetary sanction: . . . (B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned." Fed. R. Civ. P. 11(c)(5). Moreover, the federal rule also specifically incorporates the need for notice and a reasonable opportunity to respond: "(1) **In General.** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

SLIP OPINION

ignore the rule's specific language authorizing a trial court to act on its own initiative. Consequently, we conclude that the trial court's reliance upon the rationale offered by Justice Baker in her dissenting opinion in *Simes*, *supra*, which criticizes the *Weaver* opinion, was misplaced because it represents an erroneous interpretation of the law as set forth by our supreme court in *Weaver*, *supra*, and, therefore, constitutes an abuse of discretion. See *Craig v. Carrigo, supra*.

II.      The trial court created impropriety or the appearance of impropriety in failing to recuse from the case.

For its final point of appeal, the City contends that the trial court exhibited personal animosity toward the City in imposing sanctions under Rule 11 and created impropriety or the appearance of impropriety in denying the City's motion to recuse. We disagree.

It is a long-established rule that there is a presumption of impartiality on the part of judges. *Searcy v. Davenport*, 352 Ark. 307, 100 S.W.3d 711 (2003). A judge's decision to recuse is within the trial court's discretion and will not be reversed absent abuse. *Id.* The party seeking recusal must demonstrate bias. *Id.* Unless there is an objective showing of bias, there must be a communication of bias in order to require recusal for implied bias. *Id.* We do not consider evidence that is not included in the record on appeal. *Id.* The mere fact that a judge rules against a party is not sufficient to demonstrate bias. *Id.* Whether a judge has become biased to the point that he should disqualify himself is a matter to be confined to the conscience of the judge. *Id.*

Here, in support of its position that the trial court should have recused, the City basically contends that the trial court ruled in such a manner as to create impropriety or the

14

appearance of it by, for example, imputing to the City motives of harassment, imposing sanctions where none had been requested, and recharacterizing the City's "request" to Nerhan as a "demand." Our review of the record does not convince us that the trial court was motivated by bias and should have recused. We are simply not persuaded that the trial court demonstrated bias and find no abuse of the trial court's discretion in denying the motion to recuse.

Reversed in part; affirmed in part.

WYNNE, J., agrees.

VAUGHT, J., concurs.

**LARRY D. VAUGHT, Judge, concurring.** I concur with the majority in the result of this case, but I write separately to express why I believe the trial court's imposition of Rule 11 sanctions should be reversed. I believe that it is irrelevant that the trial court acted on its own motion. Arkansas law provides that the moving party establishes a violation of Rule 11 when it is patently clear that the nonmoving party's claim has no chance of success. *Ver Weire v. Ark. Dep't of Human Servs.*, 71 Ark. App. 11, 13, 26 S.W.3d 132, 133 (2000). Here, it is not patently clear that the City's claim—that it did not engage in delay or harassment tactics—had no chance of success. Because Nerhan failed to meet this burden, I would hold that the trial court abused its discretion in imposing Rule 11 sanctions.

In this case, Nerhan could not have established that it was patently clear that the City's claim had no chance of success because the City was not given a chance to present a case prior to the trial court's imposition of sanctions. The City was not provided notice and the

opportunity to defend against sanctions. No motion for sanctions was filed by Nerhan. The trial court sua sponte raised the issue of sanctions at the hearing on Nerhan's petition to reopen the Hermitage House Inn, and the City was not given notice that sanctions might be discussed at that hearing.[1] Therefore, the City was never given the opportunity, through witness testimony or documentary evidence, to explain its actions or inactions. The result is that it is not known why the City did what it did. Therefore, it was an abuse of discretion for the trial court to conclude that it was patently clear that the City's claim that it did not engage in delay tactics or harassment had no chance of success.

Furthermore, whether the City violated Rule 11 was a fact issue for the trial court to resolve, and such a fact question requires the trial court to consider evidence. *Bratton v. Gunn*, 300 Ark. 140, 143, 777 S.W.2d 219, 221 (1989). In this case, because the parties did not have notice of the trial court's intent to explore Rule 11 sanctions, there was no testimonial or documentary evidence presented by the City (or Nerhan) for the trial court to consider. In the absence of any evidence on the issue, particularly the City's intent, the trial court was again in no position to conclude that it was patently clear that the City's claim—that it did not engage in delay or harassment tactics—had no chance of success.

For these reasons, I would hold that the trial court abused its discretion in imposing Rule 11 sanctions against the City.

*D. Clifford Sward*, Office of the City Attorney, for appellant.
*Danny R. Crabtree*, for appellee.

---

[1]In fact, at the conclusion of that hearing, the trial court specifically stated that it was not going to sanction the City. It was not until the following day that the trial court issued a letter opinion imposing the Rule 11 sanctions.