901 S.W.2d 826 (1995)
321 Ark. 150
CROCKETT & BROWN, P.A. and C. Richard Crockett, Appellants,
v.
William R. WILSON, Jr., Gary D. Corum, and John R. Byrd, Appellees.
No. 94-1307.
Supreme Court of Arkansas.
June 19, 1995.
*827 John P. Gill, C. Richard Crockett, Little Rock, for appellants.
Gary D. Corum, Little Rock, for appellees.
GLAZE, Justice.
Crockett & Brown, P.A. (C & B) brings its third appeal concerning issues surrounding its efforts to recover attorney's fees in connection with its representation of Richard Courson in a negligence suit filed against Thomas Averette, who had shot Courson in the eye with a shotgun. See Crockett & Brown, P.A. v. Courson, 312 Ark. 363, 849 S.W.2d 938 (1993) (C & B I); Crockett & Brown P.A. v. Wilson, 314 Ark. 578, 864 S.W.2d 244 (1993) (C & B II).
In C & B I, this court affirmed the Ashley Circuit Court's decision that, under C & B's and Courson's original July 5, 1989 employment contract, C & B was entitled to the reasonable value for its services to the date of discharge even though Courson had terminated C & B for cause before a final settlement had been obtained. The court further held, however, that C & B was not entitled to the statutory lien under Ark.Code Ann. §§ 16-22-301-304 (Supp.1991) because that lien provision applied only where an attorney was terminated without cause. Id., 312 Ark. 377A, 849 S.W.2d 938. The court also upheld as reasonable the Ashley Circuit Court's award of attorney's fees and costs in the sum of $17,541.29.
C & B II resulted from a second lawsuit filed by C & B against Courson in the Pulaski Chancery Court. This second suit was filed after C & B appealed the Ashley Circuit Court's decision in C & B I. C & B based this subsequent suit upon the theory that it was entitled to $100,000 in attorney's fees *828 from Courson based upon a one-third contingency employment contract Courson purportedly agreed to after, and in substitute of, the parties' original agreement. Because Courson eventually obtained a $300,000 settlement, C & B claimed entitlement to one-third of it plus an attorney's lien in the same amount pursuant to Ark.Code Ann. § 16-22-301 (Supp.1991). In this Pulaski County suit, C & B joined as defendants Courson's new attorneys, Wilson, Corum and Brown (Wilson), Averette and Averette's insurer, Allstate Insurance Company. In C & B II, this court upheld the Pulaski Chancery Court's ruling that C & B's second suit was barred by res judicata and collateral estoppel. In sum, the court held that C & B could not relitigate its fee since that issue already had been decided in the Ashley Circuit Court case.
After this court's decision in C & B II, the Pulaski Chancery Court imposed ARCP Rule 11 sanctions against C & B and its attorney, C. Richard Crockett, in the sum of $15,000. In imposing sanctions, the chancery court found, contrary to C & B's contention, the Ashley Circuit Court's adjudication of the attorney's fee issue was a final one when C & B filed its Pulaski County action. The chancellor also found that it was unreasonable for C & B to believe it could seek fees under the parties' July 5 contract and its purported amended or substituted contract in separate actions. She pointed out that either the original contract was enforceable because it had not been replaced by the amended version or the amended contract was valid since it had replaced the July 5 contract. In addition, the chancellor found that, contrary to C & B's suggestion, the Ashley Circuit Court was well aware of, and considered, the final $300,000 settlement entered into by Courson and Averette when the court awarded attorney's fees, and C & B had acknowledged it could have enforced its contract rights against the new defendant attorneys in the Ashley County case.
C & B first argues that the chancery court abused its discretion by imposing Rule 11 sanctions. Under Rule 11, an attorney signing a pleading, motion, or other paper on behalf of a party constitutes a certificate that (1) the attorney made a reasonable inquiry into the facts supporting the document or pleading, (2) he or she made a reasonable inquiry into the law supporting that document to ensure that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (3) the attorney did not interpose the document for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. Ward v. Dapper Dan Cleaners & Laundry, Inc., 309 Ark. 192, 828 S.W.2d 833 (1992). When a violation of Rule 11 occurs, the Rule makes sanctions mandatory. Id. Whether a violation occurred is a matter for the court to determine, and this determination involves matters of judgment and degree, and in reviewing a trial court's Rule 11 determination, we do so under an abuse of discretion standard. Id.; see also Miller v. Leathers, 311 Ark. 372, 843 S.W.2d 850 (1992); Miles v. Southern, 297 Ark. 280-A, 763 S.W.2d 656 (1989) (supplemental opinion denying rehearing).
C & B contends the facts alleged in its complaint filed in the Pulaski County action were true and the record is devoid of any indication that C & B failed to make a reasonable inquiry into the law. C & B asserts that, before filing the Pulaski County complaint, it made an exhaustive research of the law, and based upon that research, C & B's Pulaski County action was appropriate. Wilson rejoins, stating C & B relied upon a "tortured" interpretation of statutory and appellate law in an effort to explain why C & B was justified in "relitigating" the same claim in the Pulaski County action that had already been litigated in Ashley Circuit Court. In sum, Wilson urges that C & B's Pulaski Chancery Court action involved the identical cause of action earlier decided by the Ashley Circuit Court, and therefore, the second lawsuit violated the fundamental principles of finality and issue preclusion.
In fact, this court held in Crockett & Brown, P.A. v. Wilson, 314 Ark. 578, 864 S.W.2d 244, that C & B was precluded by res judicata and collateral estoppel in its Pulaski County action from obtaining a fee pursuant to §§ 16-22-301 to XX-XX-XXX because the *829 Ashley Circuit Court previously resolved those issues involving C & B's quest for fees. Even so, Rule 11 is not intended to permit sanctions just because the court later decides that the lawyer was wrong. Rachel v. Banana Republic, Inc., 831 F.2d 1503 (9th Cir. 1987). Instead, the trial court, in exercising its discretion under Rule 11, is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535 (3rd Cir. 1985); see also Teamsters Local Union No. 430 v. Cement Exp., Inc., 841 F.2d 66 (3rd Cir.1988). Put in other terms, Rule 11 does not require that the legal theory espoused in a filing prevail. The essential issue is whether signatories of the document fulfilled their duty of reasonable inquiry into the relevant law, and the indicia of reasonable inquiry into the law include the plausibility of the legal theory espoused and the complexity of the issues raised. CJC Holdings, Inc. v. Wright & Lato, Inc., 989 F.2d 791 (5th Cir.1993). The CJC Holdings decision admonished that a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly when the law is arguably unclear. Id. at 794.
In the present case, C & B filed its Pulaski County complaint on July 2, 1992, which was nearly eight months before this court in C & B II decided C & B's second lawsuit had been barred by the Ashley Circuit Court's decision. Nonetheless, we must decide whether C & B made a reasonable inquiry into the law before, and at the time, it filed its Pulaski County action. In reviewing the Pulaski Chancery Court's decision imposing Rule 11 sanctions, we consider the complexity of the issues and the plausibility of the legal theory C & B advanced when filing its Pulaski County complaint.
C & B's justification for filing its Pulaski County action depends upon its assertion that Courson and Averette entered into their $300,000 settlement after the Ashley Circuit Court had ruled C & B was not entitled to a fee pursuant to § 16-22-301. It argues Averette, his insurer, Courson and Wilson then entered into a $300,000 settlement without considering C & B's interests. Under the rationale and holding in Lockley v. Easley, 302 Ark. 13, 786 S.W.2d 573 (1990), C & B states it believed it could pursue its fee contract rights in Pulaski County since Wilson and Averette's insurer had not been made parties in the Ashley County litigation. The Lockley case is clearly distinguishable from the situation here since there, the attorney had not been discharged for cause, and was awarded his contractual contingent fee pursuant to §§ 16-22-301-310 (1989). Even so, we do not consider C & B's different interpretation of Lockley significant when deciding whether the Pulaski chancery judge erred in imposing Rule 11 sanctions. If our decision depended merely upon whether C & B had made an honest misinterpretation of case law, we likely would find merit in C & B's argument. Instead, we find the Pulaski Chancery Court's factual and legal findings are most relevant in supporting its imposition of sanctions and in reviewing them, we conclude those findings clearly support the chancellor's holding that C & B violated Rule 11.
The chancery court went into much detail and offered objective reasons for imposing sanctions. Significantly, it emphasized that, in the Ashley Circuit case, C & B had filed a motion for new trial wherein it related that Courson and Averette had settled for $300,000. C & B moved that the Ashley County Circuit Court open up its judgment and make additional findings and conclusions. Thereafter, the Ashley Circuit Court held a hearing and subsequently amended its earlier order. During the hearing, the circuit court stated it was not justified in placing a lien on the $300,000 settlement amount. The chancellor further found the Ashley Circuit Court had entered an amended order that fixed C & B's attorney's fees, authorized the disbursement of the $300,000 settlement proceeds and dismissed Averette with prejudice. Also, the Pulaski Chancery Court found C & B acknowledged before the Ashley Circuit Court its knowledge that it could seek attorney's fees not only from Courson but from Wilson as well. Again, while C & B was aware of its remedies against Wilson in the Ashley County action, it simply failed to pursue them. *830 Instead, it opted to pursue them in Pulaski County.
C & B spends no time arguing the chancellor's findings are in error. We conclude that those findings establish that C & B knew that the Ashley Circuit Court considered and ruled upon the same issues it asked the Pulaski Chancery Court to rule on in the second lawsuit, and C & B should have known that its fee claim had been decided and was barred by the Ashley Circuit Court decision. Cf. Marrero Rivera v. Dept. of Justice, 821 F.Supp. 65 (D.Puerto Rico 1993).
In his second point for reversal, C & B argues that the trial court somehow applied the wrong standard in ruling on its motions for directed verdicts. However, since this court reviews a trial court's Rule 11 determination under an abuse of discretion standard, we conclude C & B's second issue is meritless.[1]
Thirdly, C & B suggests the Pulaski Chancery Court erred in denying its request for dismissal. C & B argued to the chancellor that because Wilson failed to raise the Rule 11 sanctions issue at trial and on cross-appeal in C & B II, Wilson and his associates waived their rights to raise such sanctions in this proceeding following the C & B II decision. Alternatively, C & B argues Wilson is barred by res judicata. See Crockett & Brown, P.A. v. Wilson, 314 Ark. at 585, 864 S.W.2d at 247. We must disagree. In Spring Creek Living Ctr. v. Sarrett, 318 Ark. 173, 883 S.W.2d 820 (1994), this court expressly held that a Rule 11 motion raises a collateral and independent claim, not a matter integral to the merits of the action. Because of the collateral nature of the Rule 11 requests for sanctions, the Pulaski Chancery Court retained jurisdiction to rule on them even though a final judgment on the parties' underlying action had been previously entered and appealed.[2]
C & B's final argument concerns its contention that the trial court erred in fixing the nature and amount of the sanctions. In imposing sanctions, the chancellor ordered C & B to pay Wilson the sum of $15,000.
Upon finding a violation of Rule 11, the trial court must impose an appropriate sanction, which may include an order for the violating party to pay the opposing party or parties the amount of the reasonable expenses they had incurred, including a reasonable attorney's fee. While this court has not established a standard of review in deciding whether a trial court has imposed an appropriate sanction, the Supreme Court has settled the issue for federal courts, holding that district courts have broad discretion not only in determining whether sanctionable conduct has occurred, but also what an appropriate Rule 11 sanction should be. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). We believe that standard should be applied here.
The federal courts have held that the primary purpose of Rule 11 sanctions is to deter future litigation abuse. See Id.; In re Kunstler, 914 F.2d 505 (4th Cir.1990). It has also been held that the least severe sanction adequate to serve the purposes of Rule 11 should be imposed, and the award of fees is but one of several methods of achieving the various goals of Rule 11. Id.; White v. General Motors Corp., Inc., 908 F.2d 675 (10th Cir.1990). In addition, the court in In re Kunstler further held that, when a monetary award is issued, the trial court should explain the basis of the sanction so a reviewing court may have a basis to determine whether the chosen sanction is appropriate. The trial court should consider (1) the reasonableness of the opposing party's attorney's fees, (2) the minimum to deter, (3) the ability to pay and (4) factors relating to the *831 severity of the Rule 11 violation. The Kunstler court further related the following:
Because the sanction is generally to pay the opposing party's "reasonable expenses... including a reasonable attorney's fee," Fed.R.Civ.P. 11, incurred because of the improper behavior, determination of this amount is the usual first step. The plain language of the rule requires that the court independently analyze the reasonableness of the requested fees and expenses. The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims. In evaluating the reasonableness of the fee request, the district court should consider that the very frivolousness of the claim is what justifies the sanctions.
Here, the Pulaski Chancery Court failed to specify in its order how it determined why the $15,000 amount was appropriate in these circumstances. In their briefs, the parties refer only to the fact that the injured parties had incurred $13,068.70 in attorney's fees. The chancery court, too, mentioned that Wilson and his associates had incurred expenses, including attorney's fees, and that they had been subjected to "substantial burden and inconvenience." But, again, the trial court did not explain how it reached the monetary award ordered.
In sum, we recognize this court, until now, has not been confronted with this issue concerning the appropriateness of a sanction or its amount, and, as a consequence, the trial court and parties here had little guidance on how to proceed with dealing with these issues. We therefore reverse and remand this matter to permit the parties and the trial court to proceed solely on the issue of the appropriateness or amount of the sanctions to be imposed, by employing the standards adopted hereinabove.
For the foregoing reasons, we affirm in part and reverse and remand in part.
NOTES
[1] C & B's motions likely should have been filed as motions to dismiss. Regardless, our standard of review is still one of abuse of discretion, and we have concluded in this respect that the trial court's factual findings and conclusions of law amply support the holding and imposition of sanctions rendered by the trial court.
[2] Although Wilson and his associates mentioned Rule 11 sanctions in their cross-appeal in C & B II, we made it clear that this court had no authority to impose such sanctions. Again, because such sanctions involve a collateral matter, the parties and the chancery court were left to consider those issues after C & B II was rendered.