Johnny WEAVER, in His Official Capacity as Mayor of the City of West Helena, Arkansas *v.* CITY of WEST HELENA, Eddie Lee, Nathan Ashwood, Edward Joshaway, James Parks, Calvin Holden, and Clarence Richardson, in Their Official Capacity as West Helena City Councilmen, and Vincent Bell, West Helena Chief of Police

05-580                                                    238 S.W.3d 74

Supreme Court of Arkansas
Opinion delivered June 29, 2006

*Murray Law Firm,* by: *Todd H. Murray,* for appellant.

No response.

BETTY C. DICKEY, Justice. Johnny Weaver, former mayor of West Helena, appeals the temporary restraining order (TRO) issued by Phillips County Circuit Judge L.T. Simes on January 3, 2005, restraining Weaver from interfering in the day-to-

day operations of the West Helena Police Department and reinstating Vincent Bell as that city's chief of police. Weaver additionally appeals Judge Simes's refusal to recuse from the case, his removal of Weaver from the courtroom during a hearing, and his imposition of Ark. R. Civ. P. 11 sanctions on Weaver and his attorney. We find that all of the points on appeal are moot with the exception of the imposition of sanctions under Rule 11, and we reverse on that point.

Mayor Weaver fired Vincent Bell in November 2004. The termination was preceded by a suspension and was confirmed by a decision of the West Helena Civil Service Commission on November 23, 2004. Bell filed a notice of appeal in the Phillips County Circuit Court on December 15, 2004, and the case, numbered 04-398, was assigned to Circuit Judge Harvey L. Yates.

The West Helena City Council, in a called meeting on Saturday, January 1, 2005, declared the seat of alderman Eddie Schieffler vacant, even though Schieffler disputed the declared vacancy and was present and attempting to vote. James Parks was elected to fill Schieffler's position and voted to reinstate Bell with the 2/3 majority, which the council maintained rendered the vote "veto-proof." The council then voted to abolish the Civil Service Commission. Weaver subsequently vetoed all measures taken by the city council at that meeting. The Phillips County Circuit Court later ruled that there had been no vacancy for Schieffler's position, that Parks was thus a usurper, and that all actions taken by the city council at the January 1 meeting were null and void.

On January 3, 2005, Bell, Parks, and five other members of the city council who had voted to reinstate Bell filed the present case, numbered 05-04, in the Phillips County Circuit Court, asking Circuit Judge L.T. Simes for a TRO which he granted, reinstating Bell and restraining Weaver from interfering in the day-to-day operations of the police department.

On January 6, 2005, approximately one hour before the scheduled hearing on the TRO, Weaver filed a motion for recusal. The motion alleged that Judge Simes had initiated an improper *ex parte* conversation with Weaver asking Weaver to deal leniently with Bell; owned an interest in a radio station that was going to be paid to air city council meetings; and had issued the TRO despite knowing that a connected case was pending before another judge. A hearing on the motion for recusal was conducted in lieu of the scheduled TRO hearing, at which time Weaver testified as to the matters contained in the motion for recusal. In the midst of

Weaver's testimony, Judge Simes called a recess and moved the proceedings to his chambers. No future hearing was scheduled prior to the conclusion of the hearing, the remainder of which took place in Judge Simes's chambers.

The next morning, January 7, 2005, Judge Simes issued an injunction which restrained the press from reporting what had transpired at the previous day's hearing. That order was the subject of our decision in *Helena Daily World v. Simes*, 365 Ark. 305, 229 S.W.3d 1 (2006). Judge Simes also issued an order scheduling a hearing on the motion for recusal for 1:00 p.m. that day in Forrest City, Arkansas. At that hearing, Judge Simes arbitrarily removed Weaver from the courtroom at the outset of the proceedings and then conducted an inquiry into possible Rule 11 violations by Weaver's attorney, Todd Murray. Weaver and Murray were given no notice that possible Rule 11 violations would be considered at the hearing, and the Rule 11 inquiry was taken up by the court before there had been a full hearing on the merits of the allegations in the motion for recusal. Judge Simes ultimately declined to recuse.

On January 26, a full hearing on the TRO was conducted by Judge Simes. On April 28, Judge Simes entered an order in which he declined to recuse from the case and imposed Rule 11 sanctions on Murray and Weaver for filing the motion to recuse for an improper purpose and without a proper factual foundation. Judge Simes acknowledged the rulings that invalidated all the actions taken at the January 1, 2005, city council meeting, but he refused to dissolve the TRO, ruling that the TRO was to be held in abeyance pending further action by the city council and Mayor Weaver. Weaver appeals the rulings in the April 28 order, as well as Judge Simes's removal of the appellant from the courtroom during the January 7 recusal hearing.

As a general rule, the appellate courts of this state will not review issues that are moot. *Cotten v. Fooks*, 346 Ark. 130, 55 S.W.3d 290 (2001). To do this would be to render advisory opinions, which we will not do. *Id.* Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.* This court has recognized two exceptions to the mootness doctrine. *Id.* The first one involves issues that are capable of repetition yet evading review, and the second one concerns issues that raise issues of substantial public interest, which if addressed, would prevent future litigation. *Id.*

■ We take judicial notice of the fact that the City of West Helena no longer exists as a separate legal entity. On January 1, 2006, the adjoining cities of Helena and West Helena merged to form the new city of Helena-West Helena. Thus, the particular governmental positions and relationships at issue in the present case are extinct, and our decision would have no practical effect upon the legal controversy here. For the foregoing reasons, we conclude that the points on appeal raised by the appellant, with the exception of the Rule 11 issue which represents an extant monetary obligation, are moot.

The appellant contends that the trial court abused its discretion by imposing Rule 11 sanctions on his attorney, Todd Murray, and himself.

Ark. R. Civ. P. 11 states in pertinent part:

(a) The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and that it is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or increase in the cost of litigation.

(b) A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (a). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe) the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

The imposition of sanctions is a serious matter to be handled with prudence, and the trial court's decision is due substantial deference. *Williams v. Martin*, 335 Ark. 163, 980 S.W.2d 248 (1998). This court reviews a trial court's determination of whether a violation of Rule 11 has occurred under an abuse-of-discretion standard. *Ward v. Dapper Dan Cleaners & Laundry, Inc.*, 309 Ark. 192, 828 S.W.2d 833 (1992). In deciding an appropriate sanction, trial courts have broad discretion, not only in determining whether sanctionable conduct has occurred, but also what appropriate sanctions should be. *Crockett & Brown v. Wilson*, 321 Ark. 150, 901 S.W.2d 826 (1995).

In his April 28, 2005, order, Judge Simes ruled that the conduct of Todd Murray in filing the motion to recuse was sufficient to warrant sanctions under Rule 11 and ordered Murray and Weaver to pay the fees and costs of the opposing attorneys for their time spent in opposing the motion. Weaver had earlier advanced three primary allegations in support of his motion to recuse. First, Weaver alleged that sometime subsequent to his suspension of Bell, Judge Simes initiated a conversation with Weaver and asked him if anything could be done to help Bell. Second, Weaver alleged that Judge Simes had an ownership interest in a radio station with which the city council had made arrangements to make paid broadcasts of the city council meetings. Third, Weaver alleged that Judge Simes had issued the TRO despite knowing that a case was pending before another circuit judge involving the same subject, which was the possible reinstatement of Bell. On January 13, Weaver withdrew this last allegation regarding Judge Simes's knowledge of the other pending case.

Throughout the proceedings, Mayor Weaver consistently maintained that the *ex parte* conversation with Judge Simes had occurred. Judge Simes never denied the conversation, and no other evidence was produced to impeach Weaver's account of the dialogue. Weaver also firmly maintained that he had been given reason to believe that an arrangement had existed whereby the city council would compensate the radio station for its broadcasts of city council meetings. The appellees called a city councilman, Eddie Lee, who testified that the council did not pay the radio station for the broadcasts, and so there was conflicting evidence as to any payment arrangement between the city council and the radio station. However, it is undisputed that Judge Simes had an ownership interest in the radio station and that the station did air the city council meetings. Thus, one of the allegations concerning the *ex parte* conversation was not contradicted. Neither of the allegations were conclusively proven to be false, and such proof should have been a prerequisite to the imposition of any sanctions under Rule 11.

In his order filed on April 28, 2005, Judge Simes relied on improper bases in imposing sanctions upon the appellant under Rule 11. Judge Simes stated that the appellant's motion for recusal was "an attempt to shop for a judge" and in support of that conclusion, Judge Simes made the following statement, "When questioned by the court about the judge shopping issue, Mr.

Murray stated, 'Yes sir, there is. I think on both sides.' That is an admission." The more complete exchange was as follows:

> THE COURT: (interposing) But, Mr. Murray there is an issue I've got to resolve. I'm not going to presuppose anything, Mr. Murray. My mind is not made up. It wouldn't be fair for me to do that, and I'm not going to do that. There is an issue in this case about judge shopping.

> MURRAY: Yes, sir, there is. I think on both sides. I heard what Mr. Lewellen said on the record yesterday that he thought there may have been some judge shopping, and there may well have been some judge shopping on their part. We weren't judge shopping. . . .

In the above statement, Murray admits that judge shopping was an issue in the case, but then states unambiguously that if any judge shopping occurred in the case, it was done by the appellees, not the appellants. In the order, Judge Simes quotes Murray's statement out of context, terms it an admission, and relies on it to support his conclusion that the appellant filed the motion to recuse in an attempt to "shop" for a judge. Judge Simes's use of the statement to support a conclusion inapposite to the statement's actual import is a significant misrepresentation. The appellant made no admission that *he* was judge shopping, and Judge Simes abused his discretion by sanctioning the appellant on that basis. Judge Simes also censured the appellant in the order for making the original allegation that Judge Simes entered the TRO despite having knowledge that a case involving the same subject matter was pending before another judge. This allegation had been properly withdrawn by the appellant seven days after the filing of the motion for recusal, and thus should not have been sanctioned under Rule 11.

There was no separate motion for sanctions made in this case, and such a motion is required by Rule 11 before sanctions may be imposed. At the January 7 hearing, which was scheduled as a recusal hearing, Judge Simes immediately began a protracted inquiry into possible Rule 11 violations by the appellant. The appellant was given no notice that Rule 11 would be addressed at the hearing. Judge Simes had Weaver removed from the courtroom initially, and he then conducted an intensive inquiry into Murray's knowledge and application of the Rules of Professional Conduct. The examination generally consisted of Judge Simes

reading sizable passages from the rule book aloud, and then questioning Murray on the extent of his knowledge thereof. Murray stated that he was familiar with the rules and had adhered to them in the present case, although he admitted that he could not recite the rule book verbatim. Weaver was then returned to the courtroom and similarly quizzed, as if he were an attorney and familiar with the rules. All this occurred prior to any real inquiry into the veracity of Weaver's allegations supporting the motion to recuse. Judge Simes seemed to presume the falsity of the allegations throughout the proceedings.

 ■ In summation, the procedural requirements for the imposition of sanctions under Rule 11 were disregarded by Judge Simes, and the appellant was subjected to a de facto Rule 11 hearing of which he was given no notice. That hearing occurred before the court attempted to establish the falsity of the allegations in the motion for recusal, and the court ultimately failed to establish that the allegations were false. Judge Simes relied on improper bases in his order imposing the sanctions. For the foregoing reasons, we conclude that Judge Simes abused his discretion by imposing sanctions upon the appellant under Rule 11. Based on the record before us, it appears that Judge Simes has violated the Arkansas Code of Judicial Conduct. Accordingly, we direct the clerk of this court to forward a copy of this opinion to the Arkansas Judicial Discipline and Disability Commission. *See Walls v. State*, 341 Ark. 787, 20 S.W.3d 322 (2000).

 Moot in part; reversed in part.