Jim Hannah, Chief Justice, concurring in part and dissenting in part. 1 -While I concur with the majority opinion that Swindle is not entitled to an award of attorney’s fees, I disagree with the majority for the following three reasons. First, I would overrule Weaver v. City of West Helena, 367 Ark. 159, 238 S.W.3d 74 (2006), on which the majority relies, because this court misquoted Arkansas Rulé of Civil Procedure 11 in that case. Second, I would affirm the circuit court’s award of Rule 11 sanctions because the circuit court properly found that Swindlé had filed a frivolous lawsuit. Third, I would defer to the superior position of the circuit court in ordering sanctions in this case. For these reasons, I respectfully dissent. I. Facts For a better understanding of Swindle’s lawsuit, I will provide a more thorough recitation of the facts. Swindle, a licensed attorney in Arkansas, negotiated a settlement with Farm Bureau on behalf of two clients. Farm Bureau sent two settlement checks in the amount of $13,500 and $11,000 to Swindle, and the clients signed the checks. Swindle then deposited the checks into his Interest On Lawyers Trust Account (“IOLTA”), which was held at Ar-vest Bank. On September 10, 2012, First Security Bank rejected the checks because of a missing endorsement, and on September 18, 2012, First Security Bank again rejected the checks because of an illegible endorsement. In an affidavit, Davia Swindle, a bookkeeper for Swindle Law Firm, stated that Jason Lyles, a bank teller at First Security Bank, told her that there was no problem with the endorsements and that the checks’ had been returned because of |8in'suffieient funds. On September 28, 2012, Swindle wrote a letter to Farm Bureau and threatened to file suit if he did not receive the money by the close of business that day. Trevitt Blackburn, Senior Adjuster for Farm Bureau, offered to reissue the checks, but Swindle elected to file suit. On October 1, 2012, Swindle filed an action against Farm Bureau, alleging breach of contract and claiming that he incurred losses totaling $24,500 by the bank’s refusal to honor Farm Bureau’s checks. Swindle presented an affidavit from two of his employees that Lyles stated that Farm Bureau had insufficient funds in the account for the two checks, but Swindle never presented an affidavit from Lyles himself. On October 24, 2012, Farm Bureau filed its answer.' In the answer, Farm Bureau stated that“[d]efen-dant respectfully asks the court to Sanction Plaintiff and to order Plaintiff to pay Defendant the reasonable expenses incurred in defending herein, including a réasonablé attorney’s fee pursuant to Rule 11 of the Arkansas Rules of Civil Procedure.” Farm Bureau did not file a separate Rule 11 motion. Farm Bureau later reissued the checks to Swindle. On April 9,2013, Swindle filed a motion for judgment on the pleadings, requesting that the case be dismissed and that he should be awarded attorney’s fees. On April 19, 2013, Farm Bureau filed a response to Swindle’s motion for judgment on the pleadings and a cross-motion for summary judgment,. denying that it , had entered into a contract with Swindle, contending that it was the .successful party, and asking for Rule 11 sanctions for Swindle’s filing a frivolous -action. 'Attached to Farm. Bureau’s motion for summary judgment were (1) an affidavit of Brenda K, Reynolds, Vice President of-First Security Bank, who stated that the illegible endorsement was the only reason that the Iflbank rejected the checks and that Farm Bureau had sufficient funds to cover the checks; (2) an .affidavit of Blackburn, who testified that Mayra Palacios, an assistant in Swindle’s office, called to tell him that the checks had been rejected and that he told her to call First Security Bank to get an explanation or to bring the checks back to get them reissued; (3) a certified letter from Farm Bureau’s attorney stating that the checks would be honored by First Security Bank if they were properly endorsed and presented; (4) emails between Farm Bureau’s attorney and Swindle; and (5) a copy of unopened, certified mail returned to sender as unclaimed. In its brief in support, Farm Bureau requested attorney’s fees pursuant to Rule 11. On June 20, 2013, the circuit court found that Farm Bureau did not. breach any contract and ruled that “sanctions [were] appropriate against Plaintiff in the form of attorney [sic] fees,” granted Farm Bureau’s, motion for summary judgment, and awarded attorney’s fees “leaving a blank for the amount, of attorney fees to be awarded.” On July 11, 2013, the circuit court entered a final order, and Swindle timely filed his notice of appeal. II. Law and Analysis The version of Rule 11 that was in effect when Swindle filed his lawsuit provided in pertinent part as follows: If á pleading, motion, or other paper is signed in violation of this rule, the court’, upon motion or upon its ovm initiative, shaíl imposé upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney’s fee. |,1ftArk. R. Civ. P. 11(a) (emphasis added).[1] This court has stated that, when a violation of Rule 11 occurs, the rule makes sanctions mandatory. Crockett & Brown, P.A. v. Wilson, 321 Ark. 150, 901 S.W.2d 826 (1995). Whether a violation occurred is a matter for the court to determine, and this determination involves matters of judgment and degree. Id. The purpose of Rule 11 is to deter future litigation abuse. Sanford v. Harris, 367 Ark. 589, 242 S.W.3d 277 (2006). The majority mistakenly relies on Weaver, 367 Ark. 159, 238 S.W.3d 74, to support its position that, before a circuit court can impose Rule 11 sanctions on its own motion, “an attorney or party is entitled to notice.” In doing so, the majority fails to recognize that the Weaver court did not quote Rule 11 in its entirety, thereby leaving the impression that there was no authority for a circuit court to act on it's own initiative. The Weaver court cited Rule 11 as follows: Ark. R. Civ. P. 11 states in pertinent part: (a) The signature of an attorney or party constitutes a certificate by him that hé has read the pleading, motion or other paper; that to the best of his knowledge, information and belief it is well'"grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and that it is not interposed for any improper purpose, such as to harass or to cause, any unnecessary delay or increase in the, cost of litigation. (b) A motion for sanctions under this rule shall be made . separately from h i other motions or requests and shall describe the specific conduct alleged to violate subdivision (a). It shall be served as provided in Rule 5 but shall not be filed with or'presented to the court unless, within'21 days after service of the motion (or such other period as the court may prescribe) the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. Weaver, 367 Ark. at 162, 238 S.W.3d at 77. In doing so, the Weaver court omitted- the remaining portion of Rule 11(a), which stated, If a pleading, motion, or other paper is not signed it shall be stricken unless it is ■ signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, -or other paper, including a reasonable attorney’s fee. Ark. R. Civ. P. 11 (2006) (emphasis added). Further, in Weaver, this court stated, There was no separate motion for sanctions made in this case, and such a motion is required by Rule 11 before sanctions may be imposed. At the January 7 hearing, which was scheduled as a recusal hearing, Judge Simes immediately began a protracted inquiry into possible Rule 11 violations by the appellant. The appellant was given no notice that Rule 11 would be. addressed at the hearing. Judge Simes had Weaver removed from the courtroom initially, and he then conducted an intensive inquiry into Murray’s knowledge and application of the Rules of Professional Conduct. The examination generally consisted of Judge Simes' reading sizable passages from the rule book aloud, and then questioning Murray on the extent of his knowledge thereof.' Murray stated that he was familiar with the rulés and had adhered to them in the present case, although he admitted that he could not recite the rule book verbatim. Weaver was then returned to the courtroom and similarly quizzed, as if he were an attorney and familiar with the rules. All this occurred prior to any real inquiry into the veracity of Weaver’s allegations supporting the motion to- recuse. Judge Simes seemed to presume-the falsity of the allegations throughout the proceedings. . ■ ■ , In summation, the procedural requirements for the imposition, of |.^sanctions under Rule 11 were disregarded. by Judge Simes, and the appellant was subjected to a de facto Rule 11 hearing of which he was given no notice. That hearing occurred before the court attempted to establish the falsity of the allegations in the motion for recusal, and the court ultimately failed to establish that'the allegations were false_ [W]e conclude that Judge Simes abused his discretion by imposing sanctions upon the appellant under Rule 11. Based on the record before us, it appears that Judge Simes has violated the Arkansas Code of Judicial Conduct. Accordingly, we direct the clerk of this court to forward a copy of this opinion to the Arkansas Judicial Discipline and ■Disability Commission. 367 Ark. at 164-65, 238 S.W.3d at 78-79 (citation omitted).[2] In Weaver, this court clearly misstated the requirements of Rule 11 and implied that the circuit court does not have the authority to act on its own initiative by stating that “[t]here was no separate motion for sanctions .. in this case, and such a motion is required by Rule 11 before sanctions may be imposed.” Weaver, 367 Ark. at 164, 238 S.W.3d at 78. The Weaver court ignored Rule ll’s specific language authorizing the circuit court to act on its own initiative when sanctions are necessary and that, under those circumstances, notice to the attorney or party was not required. For these reasons, I would overrule the Weaver case to the extent that it conflicts with the language of former Rule.11. More significantly, the majority skirts around the circuit court’s initial finding that Swindle filed a frivolous lawsuit before then imposing Rule 11 sanctions “upon its own initiative.” This threshold finding is critical to any Rule 11 analysis. In its June 20, 2013 order, the circuit court found that Farm Bureau did not breach any contract and was reasonable in its efforts to correct a situation ‘created by [Swindle] and his hsStaff.... With minimal effort, [Swin- . die] could have and should have discovered, before rushing to file suit, that the fault, if it falls upon anyone but [Swindle], might fall on the bank which was rejecting the checks, but that [Farm Bureau] had done everything required of it. Instead, [Swindle] filed what amounted to a frivolous claim against [Farm Bureau] without proper and reasonable investigation. Accordingly, the circuit court ruled that “sanctions [were] appropriate against Plaintiff in the form of attorney [sic] fees[.]” Before the circuit court was evidence, particularly the affidavits of Black-bum and Reynolds, that the checks were returned because of Swindle’s failure to obtain proper endorsements. Swindle refused to accept Farm Bureau’s offer to reissue the checks in exchange for a return of the original checks and rushed to file his lawsuit. Based on this -evidence, I agree with the circuit court’s finding that Swindle filed a frivolous claim against Farm Bureau — a ruling that the majority neglects to analyze before reaching the issue of sanctions — and with the ruling to. award Rule 11 sanctions. Finally, our standard of review should dictate the outcome of this case. This court has stated repeatedly that the imposition of sanctions rests within the discretion of the circuit court. Grand Valley Ridge, LLC v. Metropolitan Nat’l Bank, 2012 Ark. 121, 388 S.W.3d 24; Sanford, 367 Ark. 589, 242 S.W.3d 277; Whetstone v. Chadduck, 316 Ark. 330, 871 S.W.2d 583 (1994). Having served on the trial bench for twenty-two years, I acknowledge the superior position of the circuit court to determine whether a violation has occurred and whether Rule 11 sanctions are warranted. Thus, in this instance, I would defer to the circuit court’s sound judgment and hold that it did not abuse its discretion in finding that Swindle had filed a frivolous lawsuit and in imposing Rule 11 sanctions. Danielson and Wood, JJ., join. , Rule 11 was amended on April 1, 2015, and now states, "On-its own initiative,, the court may order an attorney or party to show cause why conduct specifically described in the order has not violated subdivision (b). The order shall afford the attorney or party a reasonable time to respond, but not less Than 14 days.” Ark. R, Civ. P. 11(c)(6). We note that ,the current amendment to Rule 11 is inapplicable to the present case because the former Rule 11 was in effect at the time. See, e.g,, Ligon v. Davis, 2012 Ark. 440, 424 S.W.3d 863 (applying the version of the rules in effect at the time of the conduct). . Judge Simes did not dispute the procedural errors determined by this court in Weaver because he contended that the appropriate remedy for his errors had already been provided through appellate review in the Weaver case. See Simes, 2011 Ark. 193, 381 S.W.3d 764. '