Cite as 2019 Ark. App. 472

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-18-997

| | |
|---|---|
| HARRY MCDERMOTT AND ANGELA BLEVINS | **OPINION DELIVERED:** OCTOBER 23, 2019 |
| APPELLANTS | |
| | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO 04CV-18-1095] |
| V. | |
| JAMES M. CLINE, INDIVIDUALLY AND AS TRUSTEE OF THE JAMES M. CLINE AND SUSAN CLINE TRUST | HONORABLE XOLLIE DUNCAN, JUDGE |
| | AFFIRMED |
| APPELLEE | |

## ROBERT J. GLADWIN, Judge

Harry McDermott appeals the Benton County Circuit Court's orders sanctioning him under Rule 11 of the Arkansas Rules of Civil Procedure (2018) and denying his motion for recusal. On appeal, McDermott contends that the circuit court abused its discretion. We affirm.

### I. *Facts*

McDermott, attorney for Angela Blevins, filed suit on her behalf alleging breach of fiduciary duty and conversion against James M. Cline, Angela's stepfather. James was married to Angela's mother, Susan Cline, who died on February 4, 2017. In her will, Susan left her estate to the James M. Cline and Susan E. Cline Trust (the Trust), which was established by a "Revocable Trust Agreement" between James and Susan.

The Trust was established for the management of the couple's estate during their lifetimes and for the distribution of their estate upon the death of the survivor of them, and

the Trust contains all their real and personal property. The Trust provides that (1) Susan and James are the "settlors" and the "trustees"; (2) the term "settlors" includes the surviving settlor; (3) the survivor of them would serve as the trustee; and (4) if either were unable to serve as trustee, a successor trustee is named. The Trust names Angela and her children, among others, as residual beneficiaries upon the death of the surviving settlor.

Paragraph 7 of the Trust provides in part:

7. Settlors' Rights to Amend or to Revoke Trust: The settlors may, by signed and dated instruments delivered to trustees during settlors' lives:

A. Withdraw property from this trust in any amount or and at any time upon giving at least one business day's notice in the event of a withdrawal less than the amount of the entire trust assets or at least five business days' notice in the event of a revocation of the trust prior to the withdrawal.

B. Add other property to this trust.

C. Revoke or amend any term of this agreement in its entirety by giving written notice of the revocation or amendment to the trustees.

Trustees may waive any notice requirement imposed by this section.

James filed an affidavit for collection of a small estate in the circuit court after Susan died. Angela filed a competing petition for appointment of administrator of her mother's estate. During their litigation in the circuit court, Angela's attorney deposed James, who testified that he and Susan had similarly drafted wills that devised their assets to their Trust. The circuit court denied Angela's petition, and she did not appeal.

Instead, Angela filed a new case against James in the circuit court and alleged that the Trust had become irrevocable when Susan died and that it could be amended only for Angela's benefit. She claimed that James, as the trustee, owed her a fiduciary duty and that

2

he had breached that duty. The complaint alleged that James breached his fiduciary duty as follows:

a. undisputedly lied to Angela about the contents of her mother's will;

b. undisputedly lied to Angela about the contents of the trust;

c. undisputedly had his attorney lie to Angela about her rights under the trust;

d. undisputedly filed fraudulent probate pleadings to enable him to transfer probate assets intended for the trust to be placed into his own personal account;

e. refused to show Angela her mother's will or her mother's trust;

f. refused to provide Angela with any knowledge about the trust;

g. forced Angela to file probate pleadings and this civil lawsuit to discover information about the trust and her mother's will knowing this was going to cause her attorney fees and other legal costs;

h. threatened Angela with Rule 11 pleadings to coerce her from using probate proceedings to find out about the contents of her mother's will or the contents of her mother's trust, which was the sole beneficiary of her mother's will;

i. refused to testify in a deposition about the contents of the trust, his interpretation of his duties under the trust, what he has done with trust assets, or any of his amendments to the trust;

j. refused to allow a handwriting expert to examine Susan's signature on her will and the trust;

k. amended the trust for his self-dealing interest despite his fiduciary duty to Angela; and

l. converted trust property.

Angela's conversion claim against James was that he had made an affidavit for collection of small estate and had fraudulently stated that he was the sole beneficiary of Susan's will. Angela argued that in defiance of the will and the Trust, James had exercised

3

control over probate assets and used his fraudulent affidavit to withdraw $8,500 from Susan's Merrill Lynch account and transferred the money into his personal account. She argued that as a beneficiary of the Trust, she had been damaged by James's conversion.

After he filed his answer, James moved for judgment on the pleadings and alleged that even if the facts in Angela's complaint were true, she had failed to allege facts sufficient to support her claims for breach of fiduciary duty or conversion. The circuit court granted James's motion, finding that the language of the trust agreement indicated that the Trust was revocable and gave the surviving settlor the authority to amend or revoke the terms of the Trust at his or her discretion. Angela did not appeal the circuit court's judgment on the pleadings.

James also moved for Rule 11 sanctions. He argued that the will and the Trust were attached to Angela's complaint and that they clearly indicate (a) the Trust was the sole beneficiary of Susan's will; (b) James was the sole trustee of the Trust when Susan died; (c) James is the sole beneficiary of the Trust during his lifetime, and he has the power to consume the entire corpus of the Trust; (d) James has the authority to revoke or to amend the Trust during his lifetime; and (e) Angela would benefit from the Trust only to the extent its assets were not consumed by James or if James did not revoke or amend the Trust to remove her as a beneficiary.

James further argued that both Angela and her attorney, McDermott, intended to harass and slander him by alleging in her pleadings that when Angela's sister, Jacqueline,

> accused [James] in 2006 of sexually abusing her [while] growing up, her relationship ended with her mother. Jacqueline and her husband moved to Virginia where she would have nothing more to do with her mother or [James].

4

James argued that this allegation had no bearing on Angela's claims against him for breach of fiduciary duty and conversion. James attached Jacqueline's affidavit denying the allegation, and James's attorney advised McDermott by letter on May 14, 2018, that Rule 11 sanctions would be sought unless the complaint was dismissed.

A hearing was held on September 12, 2018, wherein McDermott testified about his understanding of the case and the reasons he believed that the Trust became irrevocable when Susan died. He said that the basis for the allegation regarding Jacqueline's accusation against James was that Angela had informed him that "this was a family trauma that happened in 2006. . . . I talked to Jacqueline's father about it," and her father had confirmed that this allegation was made by Jacqueline. McDermott insisted that this allegation was necessary to show that Angela was not disinherited and why Jacqueline had been. He argued that Susan's desire not to disinherit Angela supported his theory that the Trust was irrevocable after Susan's death.

The circuit court granted James's Rule 11 motion. The September 17 order states as follows:

1. Mr. McDermott filed the Complaint without any evidentiary support for his allegation that the James M. Cline and Susan E. Cline Trust became "irrevocable" upon the death of Susan E. Cline. The language of the trust document clearly gives [James] the right, as the surviving settlor, to amend or to revoke the Trust at his discretion.

2. Mr. McDermott filed the Complaint without any evidence that James M. Cline and Susan E. Cline agreed with each other to not revoke their Wills or their trust document upon the death of the first one of them to die.

3. Mr. McDermott alleged in his Complaint, "When Jacqueline accused [James] in 2006 of sexually abusing her growing up, her relationship ended with her mother. Jacqueline and her husband moved to Virginia where she would have nothing more to do with her mother or [James]." This allegation was

5

made solely to harass and intimidate [James]. Mr. McDermott failed to withdraw this allegation after receiving [Jacqueline's] Affidavit to the effect that [James] never molested her, after talking to family members, including Jacqueline's father, who verified that Jacqueline made the accusation, and after asking [James] about the accusation to which he replied under oath that the accusation was between Jacqueline and her mother.

Accordingly, the circuit court held that McDermott had violated his obligations under Rule 11 and sanctioned him in the amount of the attorney's fees incurred by James—$10,597.50.

After the order was filed, McDermott filed a motion to reconsider, motion for recusal, and request for hearing, and the circuit court denied them. McDermott filed a notice of appeal, and this appeal followed.

## II. *Rule 11 of the Arkansas Rules of Civil Procedure*

Under Rule 11, the signature of an attorney or party constitutes a certificate that to the best of his knowledge, information, and belief, formed after a reasonable inquiry:

(1) the pleading, motion, or other paper is not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support[.]

Ark. R. Civ. P. 11(b)(1)–(3). Rule 11(c) provides for sanctions when an attorney signs a pleading in violation of the rule. Sanctions may include an order to pay the amount of reasonable expenses incurred by the other party because of the filing of the pleading, including a reasonable attorney's fee. Ark. R. Civ. P. 11(c)(2)(A). Rule 11(c)(5) states,

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5 but shall not be filed with or

6

presented to the court unless, within 21 days after service of the motion, or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

We review a circuit court's determination of whether a violation of Rule 11 occurred—and what the appropriate sanction should be—under an abuse-of-discretion standard. *Grand Valley Ridge, LLC v. Metro. Nat'l Bank*, 2012 Ark. 121, at 21, 388 S.W.3d 24, 37 (citing *Crockett v. C.A.G. Invs., Inc.*, 2011 Ark. 208, 381 S.W.3d 793). In our review, we give the circuit court's determination "substantial deference." *Id.*

> The primary purpose of Rule 11 sanctions is to deter future litigation abuse, and the award of attorney's fees is but one of several methods of achieving this goal. *See Crockett & Brown, P.A. v. Wilson*, 321 Ark. 150, 901 S.W.2d 826 (1995). . . .
>
> Rule 11 is not intended to permit sanctions just because the trial court later decides that the attorney against whom sanctions are sought was wrong. *Crockett & Brown, supra*. In exercising its discretion under Rule 11, the trial court is expected to avoid using the wisdom of hindsight and should test the lawyer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *Id.* The essential issue is whether the attorney who signed the pleading or other document fulfilled his or her duty of reasonable inquiry into the relevant law, and the indicia of reasonable inquiry into the law include the plausibility of the legal theory espoused in the pleading and the complexity of the issues raised. *Id.* The moving party establishes a violation of Rule 11 when it is patently clear that the nonmoving party's claim had no chance of success. *See Chlanda v. Killebrew*, 329 Ark. 39, 945 S.W.2d 940 (1997).

*Pomtree v. State Farm Mut. Auto. Ins. Co.*, 353 Ark. 657, 666–67, 121 S.W.3d 147, 152–53 (2003).

For reversal, McDermott argues that the circuit court abused its discretion by finding that he had violated Rule 11 when he filed a complaint against James. He realleges as bases for the breach-of-fiduciary-duty claim the reasons listed as paragraphs (a) through (l) in Angela's civil complaint. He also recites the law on reciprocal wills in Arkansas, citing

7

*Gregory v. Estate of Gregory*, 315 Ark. 187, 866 S.W.2d 379 (1993), which held that, generally, the surviving spouse is required to dispose of the collective property according to the joint will or mutual wills. He argues that James's testimony in the deposition taken in the probate matter proves that it was his and Susan's intent to enter into a contract to execute mutual wills and a trust for Angela's benefit. He argues that pursuant to the provisions of the Trust, the stated intent of the settlors, and Arkansas law, James had a fiduciary duty to manage the Trust assets in Angela's best interest and could not take the assets for his own benefit or ever amend or revoke the Trust to Angela's detriment.

McDermott admits that the circuit court dismissed Angela's complaint for breach of fiduciary duty and that Angela did not appeal that decision. Nevertheless, he argues that it was an abuse of discretion for the circuit court to dismiss Angela's complaint. He also contends that it was an abuse of discretion for the circuit court to find that McDermott had filed the complaint without evidence or law to support that the Trust had become irrevocable and that James owed Angela a fiduciary duty as its sole trustee. He further argues that the circuit court abused its discretion by finding that he intended only to harass James by pleading the "well-substantiated fact that Jacqueline Daniel was disinherited in the will and the trust because she accused [James] of sexually abusing her growing up." He argues that he had intended to introduce this "family tragedy fact" to show proof Susan did not want to disinherit Angela like she had disinherited Jacqueline.

James contends that had McDermott made a reasonable inquiry, he would have discovered his mistake of law or fact. *See Cortinez v. Brighton*, 320 Ark. 88, 894 S.W.2d 919 (1995). If he failed to make such reasonable inquiry before filing the complaint, sanctions

8

are mandatory. *Ward v. Dapper Dan Cleaners & Laundry, Inc.*, 309 Ark. 192, 828 S.W.2d 833 (1992). James argues that McDermott's factual contentions lacked evidentiary support.

We agree with James. The allegation that the Trust became irrevocable and could only be amended by its own terms for the benefit of its beneficiary, Angela, is incorrect. The Trust is entitled "Revocable Trust Agreement," and it gives the surviving settlor— James—the right to revoke or to amend the Trust. Further, "conversion" is defined as exercising control over the goods at issue in exclusion or defiance of the owner's rights. *Commercial Fitness Concepts, LLC v. WGL, LLC*, 2017 Ark. App. 148, at 7, 516 S.W.3d 764, 769. The claim for conversion was defective because it did not allege that Angela was the owner of the $8,500 held in Susan's Merrill Lynch account; thus, Angela had no standing to make a conversion claim. Accordingly, it was not an abuse of discretion for the circuit court to find that McDermott violated Rule 11 by failing to make a reasonable inquiry into the law and the facts.

Further, Jacqueline is not McDermott's client; Angela is. Jacqueline signed an affidavit that refuted McDermott's allegations regarding abuse. McDermott had been warned not to publicize such an allegation without evidentiary support. The circuit court observed that there was no good reason for that kind of an allegation to be in the pleading. Considering (1) McDermott's failure to amend or withdraw his complaint after being served with a motion for Rule 11 sanctions, (2) McDermott's testimony, (3) trial exhibits, and (4) arguments, the circuit court did not abuse its discretion by imposing Rule 11 sanctions.

9

In considering the circuit court's denial of McDermott's motion to recuse, our standard of review is as follows:

> Canon 2 of the Arkansas Code of Judicial Conduct provides that a "judge shall perform the duties of judicial office impartially, competently, and diligently." Rule 2.11(A)(1) of the Code provides that a judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including when the judge has a personal bias or prejudice concerning a party or a party's lawyer. A judge is presumed to be impartial, and the party seeking recusal must demonstrate bias or prejudice on the part of the judge. *Ferren v. USAA Ins. Co.*, 2015 Ark. App. 477, 469 S.W.3d 805. The proper administration of the law requires not only that judges refrain from actual bias but also that they avoid all appearance of unfairness. *Id.* When a judge exhibits bias or the appearance of bias, the appellate court will reverse. *Id.* We review a trial court's denial of a motion to recuse under an abuse-of-discretion standard. *Ferguson* [*v. State*, 2016 Ark. 319, 498 S.W.3d 733]. A clearly erroneous interpretation or application of a law or rule will constitute a manifest abuse of discretion. *Id.* To decide whether there has been an abuse of discretion, the appellate courts will review the record to determine if prejudice or bias was exhibited. *Owens v. State*, 354 Ark. 644, 128 S.W.3d 445 (2003).

*In re Estate of Edens*, 2018 Ark. App. 226, at 19–20, 548 S.W.3d 179, 190–91.

McDermott argues that the circuit court abused its discretion by not recusing. He claims that the circuit court demonstrated its bias. "It was and still is his belief the trial court was subconsciously protecting the attorney [for James,] Stephen Wood[,] from his unethical behavior of representing two clients with a conflict of interest[.]" McDermott contends that the "result of Mr. Wood's malpractice" was that James could revoke or amend the Trust after his wife died and that this is against her stated intent. He further claims that if this case is reversed on appeal, he is subject to the circuit court's subconscious bias or prejudice. He recites the facts as he alleged in Angela's complaint and asks this court how it was possible for the circuit court to find no proof to support the theory that James and Susan entered into mutual wills and a trust in order to provide Susan's daughter, Angela,

with an inheritance. He contends that the lack of evidence that Angela intended only to harass James by filing a lawsuit with no factual or legal support combined with the circuit court's negative rulings throughout demonstrate the appearance of unfairness and the likelihood the circuit court on remand would not allow or at least make it difficult for him to obtain a refund on the attorney's fees he was ordered to pay.

McDermott does not cite a single comment from the circuit court that demonstrates bias. McDermott construes the circuit court's rulings to support his argument that the circuit court was "subconsciously" protecting opposing counsel who had committed "malpractice." McDermott's arguments are premised on his belief that Susan and James had entered into mutual wills and a trust for the purpose of providing for Angela. However, the Trust does not support this argument. A review of the record illustrates that the circuit court demonstrated it was unbiased by admonishing counsel throughout and by allowing every opportunity for counsel to explain and support his reasoning for conducting the lawsuit in the manner in which he did. Accordingly, the circuit court did not abuse its discretion, and we affirm.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Harry McDermott*, for appellants.

*Stephen Lee Wood, P.A.*, by: *Stephen Lee Wood*, for appellee.